# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAMUEL CICALO,<br>     Plaintiff, | No. 3:16-cv-339 (SRU) |
| v. | |
| MCCALLA RAYMER LEIBERT PIERCE<br>and CHRISTOPHER PICARD,<br>     Defendants. | |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Samuel Cicalo filed this action on March 1, 2016, against the law firm Hunt Leibert Jacobson, P.C. ("Hunt")[1], and one of its attorneys, Christopher J. Picard, alleging multiple violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). On April 26, 2016, defendants moved to dismiss all claims for failure to state a claim. Thereafter, on September 6, 2016, Cicalo filed a motion to amend his complaint in which he sought to add factual allegations in an attempt to cure perceived defects in the complaint. On January 10, 2017, in a single ruling, I granted Cicalo's motion to amend his complaint and, construing the defendants' earlier motion to dismiss as applied to the Amended Complaint, I dismissed the claims brought under sections 1692f and section 1692g. Following that ruling, the only claims remaining in this case pertain to alleged violations of 15 U.S.C. § 1692e. On March 30, 2017, Cicalo filed a motion for summary judgment on the remaining claims. On May 22, 2017, the defendants filed an opposition to Cicalo's motion, which included a cross-motion for summary

---

[1] Hunt Leibert Jacobson, P.C., has since merged with another firm and together they are now known as McCalla Raymer Leibert Pierce ("McCalla").

judgment. Because both parties have moved for summary judgment, I now consider whether it would be appropriate in favor of either party, or whether the matter will proceed to trial.

## I.     Standard of Review

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"). When a motion for summary judgment is properly supported by documentary and testimonial evidence, however, the nonmoving party may not rest upon the mere allegations or denials of the pleadings, but must present sufficient probative evidence to establish a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

"Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991); *see also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). If the nonmoving

party submits evidence that is "merely colorable," or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50.

> The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Id.* at 247–48. To present a "genuine" issue of material fact, there must be contradictory evidence "such that a reasonable jury could return a verdict for the non-moving party." *Id.* at 248.

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex*, 477 U.S. at 322. In such a situation, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23; *accord Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (movant's burden satisfied if he can point to an absence of evidence to support an essential element of nonmoving party's claim). In short, if there is no genuine issue of material fact, summary judgment may enter. *Celotex*, 477 U.S. at 323.

## II.      Background

I assume the parties' familiarity with the facts and provide only a brief overview of the undisputed facts. The instant dispute arises out of a mortgage loan transaction between Cicalo and First Niagara Bank, N.A. ("First Niagara"), which closed in 2004. On September 3, 2015, Hunt sent a letter (the "September 3 Letter") on behalf of First Niagara, which stated that Cicalo

owed First Niagara $115,058.54. On September 10, 2015, Cicalo responded in writing,

disputing the amount owed and demanding an itemization of the debt. On November 19, 2015,

Picard sent Cicalo a letter in which he stated that he had contacted First Niagara and confirmed

that the amount set forth in the initial letter was accurate. Included in Picard's letter were (1) a

copy of a prior letter from Hunt to Picard, dated November 19, 2015 (the "November 19

Letter"), which disclosed a balance of $124,062.90, as of that date; (2) documents disclosing a

balance of $96,354.27 as of August 15, 2015; and (3) documents showing the assignment of the

note and mortgage by the predecessor of First Niagara to NewAlliance Servicing Company, now

known as First Niagara Servicing Company.

On November 24, 2015, Cicalo responded in writing, once again disputing the balance

and requesting an itemization of seven of the purportedly new charges set forth in the November

19 Letter. The defendants did not respond to Cicalo's November 24, 2015 letter and thereafter

instituted a foreclosure action on behalf of First Niagara against Cicalo in December 2015. The

documents served on Cicalo in the foreclosure action included an additional document, which

referenced Cicalo's right to dispute the debt or any portion thereof. On December 30, 2015,

Cicalo once again disputed the balance listed in the foreclosure action and requested an

itemization of the debt. The defendants never responded to that request.

III.    **Discussion**

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt

collectors, to [en]sure that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged, and to promote consistent State action to protect

consumers against debt collection abuses.'" *Hess v. Cohen & Slamowitz LLP*, 637 F.3d 117, 120

(2d Cir. 2011) (quoting 15 U.S.C. § 1692(e)). Section 1692e of the FDCPA provides that "[a]

debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

"[T]he question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (citing *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 2003)). "This objective standard is designed to protect all consumers, the gullible as well as the shrewd, while at the same time protecting debt collectors from liability for bizarre or idiosyncratic interpretations of collection notices." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998) (internal quotations omitted). The test aims at balancing the need to protect consumers against the need to ensure that debt collectors are not held liable "for unreasonable misinterpretations of collection notices." *Clomon*, 988 F.2d at 1319. This objective standard presumes the consumer possesses at least a "rudimentary amount of information about the world." *Id.*

Before addressing whether or not the defendants' actions could be considered violations of the FDCPA, I must first consider whether there are sufficient facts in the record for a jury to conclude that the defendants are in fact debt collectors under the FDCPA. *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 60–61 (2d Cir. 2004). Next, because the remaining allegations involve violations of section 1692e, I must also determine whether the alleged communications were "in connection with" the collection of a debt. *Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015).

1. *Whether defendants are debt collectors*

To bring a defendant within the ambit of the FDCPA, it is the plaintiff's burden to prove "the defendant's debt collector status." *Goldstein*, 374 F.3d at 60. In other words, to survive

summary judgment, Cicalo must "make a showing sufficient to support a determination that [the defendants were] debt collector[s] at the time [they] issued the challenged communication." *Id.* at 60–61. A plaintiff may establish a defendant's debt collector status by showing: (1) that debt collection is the "principal purpose" of the defendant's business; or (2) that the defendant "regularly" engages in debt collection activity. *Id.* at 61 (quoting 15 U.S.C. § 1692a(6)). Because there is no contention—or at least no evidence—that debt collection was a principal purpose of the defendants' business, the issue is whether the defendants "regularly engaged in such activity." *Id.* at 61.

### a. Debt Collection Activity

Before addressing whether the defendants engaged in debt collection with sufficient regularity, I must first determine whether the complained-of conduct constitutes "debt collection activity." *Id.* at 61. Defendants argue that their communications to Cicalo cannot constitute debt collection activity because the communications were made for the sole purpose of enforcing a security interest.

Defendants are correct that many courts have concluded that communications sent for the sole purpose of enforcing a security interest do no constitute debt collection activities. *See Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 361–62 (D. Conn. 2012) (collecting cases). Those cases rely on a construction of section 1692a(6) that implicitly exempts enforcers of security interests from the requirements of the FDCPA. *Id.* at 361. Relying on the interpretive cannon of "*expression unius est exclusion alterius*," courts point to the fact that section 1692a(6) only expressly identifies enforcers of security interests as debt collectors in reference to Section 1692f(6), which prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property [under false pretenses]." *See Derisme*,

880 F. Supp. 2d at 361.  The fact that "the statute specifically says that a person in the business of enforcing security interests is a 'debt collector' for the purposes of § 1692f(6) . . . reasonably suggests that such a person is not a debt collector for purposes of the other sections of the Act." *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009).

I do not find those cases persuasive because their effect is to imply an identity-based exclusion where Congress did not expressly provide it.  *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 179 (3d Cir. 2015), *cert. denied sub nom. Udren Law Offices, P.C. v. Kaymark*, 136 S. Ct. 794 (2016) (holding enforcers of security interests not exempted from FDCPA).  Section 1692a(6) broadly defines "debt collector" as, inter alia, "any person . . . who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  It specifically exempts from liability certain classes of individuals notwithstanding the fact that they make take actions to collect or attempt to collect on a debt.  *Id.* at § 1692a(6)(A)–(F).  Notably absent from those exclusions are individuals engaged in the enforcement of security interests.  *See Wilson v. Draper & Goldberg, P.L.L.C.*, 443 F.3d 373, 378 (4th Cir. 2006).  The natural implication of that absence is that individuals engaged in the enforcement of security interests may be considered debt collectors so long as they engage in activities to collect or attempt to collect a debt.  *See Kaymark*, 783 F.3d at 179.  Section 1692a(6)'s reference to enforcers of security interests operates only to "*include* as debt collectors, for the purposes of § 1692f(6), those who only enforce security interests" and who would not otherwise qualify as debt collectors under section 1692a(6)'s general definition.  *Wilson*, 443 F.3d at 378 (emphasis in original).  As the courts in *Kaymark* and *Wilson* have noted, any conclusion to the contrary would "create an enormous loophole in the FDCPA by immunizing any debt from coverage if that debt happened to be secured by a real property

interest and foreclosure proceedings were used to collect the debt." *Kaymark*, 783 F.3d at 179

(quoting *Wilson*, 443 F.3d at 376) (internal alterations omitted).

My interpretation of section 1692a(6) comports with the Second Circuit's view of that

section and the FDCPA in general. *See Goldstein*, 374 F.3d at 60 (citing *Heintz v. Jenkins,* 514

U.S. 291, 299 (1995)) ("The Supreme Court has made it clear that the FDCPA applies to

attorneys 'regularly' engaging in debt collection activity, including such activity in the nature of

litigation."). In *Goldstein*, the Court held that state-law required notices issued by a law firm in

connection with eviction proceedings constituted a "debt collection activity, within the scope of

the FDCPA." *Id.* The Court was not concerned that the purposes of such notices were to

commence summary proceedings to recover possession of property rather than collect on a debt.

*Id.* at 59 n.1. Similarly, in *Hart v. FCI Lender Serv., Inc.*, the Court did not spend any time

considering the status of the purported debt collector or the purposes for which it was sending the

alleged communication. 797 F.3d 219, 226 (2d Cir. 2015). Rather, in determining whether a

letter was an attempt to collect a debt, the Court looked to whether a reasonable consumer would

interpret it as an attempt to collect such debt. *Id.* The Court explicitly held that neither

defendant's purported intention in sending the letter—to comply with the Real Estate Settlement

Procedure Act ("RESPA")—nor "the absence of an explicit payment demand" operated to "take

the communication outside the FDCPA." *Id.* at 226–27. In other words, to determine whether a

given communication constituted a debt collection activity, the Second Circuit looks to the

communication itself and not the identity or intent of the sender. *Id.* Moreover, the Court was

unconcerned with the fact that a defendant may incur FDCPA liability by simply complying with

another federally or state-law mandated requirement. *Id.*; *see also Romea v. Heiberger &*

*Assocs.*, 163 F.3d 111, 118 (2d Cir. 1998) (compliance with state law requirement insufficient to absolve defendant of liability under FDCPA).

Because I conclude that enforcers of security interests are not *per se* excluded from the definition of debt collector under the FDCPA, I must next consider whether the defendants' alleged conduct constitutes a "debt collection activity" under section 1692a(6). Whether a communication constitutes a "debt collection activity" under section 1692a(6) and whether that same communication constitutes a communication sent "in connection with the collection of any debt" under section 1692e appear to be analogous inquiries. If anything, latter inquiry is a narrower one, such that any letter deemed to be sent "in connection with the collection of any debt" will also be deemed to constitute a "debt collection activity." *See Kaymark*, 783 F.3d at 179 (noting "broad definition" of "debt collection" under the FDCPA); *Kaltenbach v. Richards*, 464 F.3d 524, 529 (5th Cir. 2006) ("party who satisfies § 1692a(6)'s general definition of a 'debt collector' is a debt collector for the purposes of the entire FDCPA even when enforcing security interests). In other words, if I determine that the defendants sent a communication to Cicalo "in connection with the collection of any debt," I will have also determined that they engaged in a debt collection activity with respect to Cicalo.

In the context of section 1692e, the Second Circuit has held that an "*attempt* to collect a debt . . . qualifies as a communication 'in connection with the collection of any debt.'" *Hart*, 797 F.3d at 226. To determine whether a letter is an attempt to collect a debt, the court must look to whether a reasonable consumer would interpret it as such an attempt. *Id.* ("[I]f a consumer receiving a letter could reasonably understand it to be a communication in connection with the collection of a debt, then the consumer is entitled to the protections Congress has

mandated for such communications.").  In *Hart*, the Court determined that the letter at issue was

"unambiguously" an attempt to collect a debt because:

> (1) the letter directed the recipient to mail payments to a specified address, (2) the letter referred to the FDCPA by name, (3) the letter informed the recipient that he had to dispute the debt's validity within thirty days, and (4) most importantly, the letter "emphatically announce[d] itself as an attempt at debt collection: 'THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*Carlin v. Davidson Fink LLP*, 852 F.3d 207, 215 (2d Cir. 2017) (identifying factors set forth in

*Hart*, 797 F.3d at 226).  The Court in *Carlin* re-emphasized that the sender's statement that it is a

debt collector attempting to collect a debt constitutes strong evidence that a reasonable consumer

would interpret the communication as an attempt to collect a debt.  *Id.*  The absence of a demand

for payment of the debt it is not dispositive.  *Hart*, 797 F.3d at 227.  Moreover, the sender's

stated purpose for sending the communication is not relevant to what a reasonable consumer

receiving the letter would understand its purpose to be.  *Id.* at 226.[2]

In the instant case, the September 3 Letter states the balance that Cicalo owed to First

Niagara, provides information about how to pay the amount owed, and states explicitly that the

sender was "hired to collect on this debt."  Pl.'s Ex. 1 (doc. # 70-2).  It also gives Cicalo notice

of the opportunity to dispute the debt and obtain a verification of such debt.  Finally, and most

importantly it concludes with the following statement: "This firm is a debt collector.  We are

attempting to collect a debt and any information obtained will be used for that purpose."  *Id.*

Below the signature line, the letter repeats those statements.  *Id.*

---

[2] In *Hart*, the fact that the defendant's "sole intention in sending the Letter was to comply with RESPA" did not weigh against the finding that the communication was a sent in connection with an attempt to collect a debt.  *Hart*, 797 F.3d at 226.

This case is in many ways analogous to a case previously decided by the Fourth Circuit. In *Wilson*, the Court held that the defendants were subject to the FDCPA when they wrote the plaintiff "to announce that she was in default on her loan and that they were preparing foreclosure papers." *Wilson*, 443 F.3d at 374–75. The letter at issue stated that it was "an attempt to collect a debt," and provided the plaintiff with information about validating the debt, the amount of the debt, and the creditor to whom the debt is owed. *Id.* The Court held that the letter was a communication in connection with the collection of a debt even though it expressly disclaimed the notion that the defendants were debt collectors. *Id.*

Like the letter in *Wilson*, the September 3 Letter informs the recipient regarding the amount owed, how to satisfy the debt, and the process for verification. More importantly, and more directly than the letter in *Wilson*, and the letter states that the sender is a debt collector who is currently attempting to collect on a debt. A reasonable consumer would view the letter as an attempt to collect on a debt. Accordingly, by sending the letter, the defendants can be considered to be engaging in debt collection activities.[3] Still, to be brought within the ambit of the FDCPA, the defendants must be "regularly" engaged in such activity.

    b.    "Regularly" Engaged in Debt Collection Activity

"[W]hether a lawyer or law firm 'regularly' engages in debt collection activity within the meaning of section 1692a(6) of the FDCPA must be assessed on a case-by-case basis in light of

---

[3] Even if actions taken in connection with the enforcement of a security interest were exempted from the FDCPA, there is no evidence that the September 3 Letter is a part of the foreclosure action itself. It was sent months prior to the initiation of the foreclosure proceeding. In that manner, it is even further removed from the foreclosure action than the letter considered in *Carlin*, which was deemed an attempt to collect a debt even though it was sent while the foreclosure proceeding was pending. *See Carlin*, 852 F.3d at 215. The defendants should not be able to skirt the requirements under the FDCPA merely because their actions were taken in connection with a potential foreclosure action. *Wilson*, 443 F.3d at 379.

the factors bearing on the issues of regularity." *Goldstein*, 374 F.3d at 62.  The relevant factors include, but are not limited to:

> (1) the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s), (2) the frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable, (3) whether the entity has personnel specifically assigned to work on debt collection activity, (4) whether the entity has systems or contractors in place to facilitate such activity, and (5) whether the activity is undertaken in connection with ongoing client relationships with entities that have retained the lawyer or firm to assist in the collection of outstanding consumer debt obligations.

*Id.* at 62–63.  Whether the defendant markets itself "as having debt collection expertise" is also an indicator of the regularity of collection as part of its practice.  *Id.* at 63.

In the instant case, Cicalo alleges that each defendant "regularly collects, or attempts to collect, defaulted home mortgage debts and other consumer debts."  Am. Compl. at ¶ 30. Furthermore, Cicalo alleges that the defendants sent multiple communications to Cicalo in an attempt to collect a debt owed by Cicalo to First Niagara.  Am. Compl. at ¶¶ 9, 12.  Defendants do not appear to move for summary judgment on the ground that they did not regularly engage in the activity of which Cicalo complains.[4]  That is somewhat strange because there does not appear to be any evidence, in Cicalo's Local Rule 56(a)1 statement or elsewhere in the record, that the defendants are *regularly* engaged in debt collection activity.  For example, Cicalo has provided no evidence about the number of alleged debt communications that the defendants have issued, the frequency of such communications, or whether they had a system to facilitate debt collection activity.  The failure to offer evidence that the defendant is engaged in debt collection activity "with any sort of regularity" is fatal to Cicalo's claim.  *James v. Wadas*, 724 F.3d 1312, 1318

---

[4] They do, of course, move for summary judgment on the issue whether that activity constitutes "debt collection activity."  That issue will be addressed below.

(10th Cir. 2013); *Milton v. Rosicki, Rosicki & Assocs., P.C.*, 2007 WL 2262893, at *7 (E.D.N.Y. Aug. 3, 2007) ("Other than bare allegations in his complaint [plaintiff] has not produced any specific facts to support an inference that defendants . . . either (1) engaged in a business the primary purpose of which was the collection of debt or (2) 'regularly' engaged in debt collection activity.").

The only portion of Cicalo's Rule 56(a)1 statement that could be construed as evidence of the defendants' status as debt collectors is paragraph 13, which states that the communication to Cicalo "was a Hunt form letter sent under the Hunt letterhead." Pl.'s Local Rule 56(a)1 Stmt. at ¶ 13. Such evidence is insufficient for a reasonable jury to conclude that the defendants engage in debt collection with enough regularity to consider them debt collectors under the FDCPA. *See Goldstein*, 374 F.3d at 62 (refusing to adopt standard that "handful" of debt collections are conclusive of debt collector status); *but see Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005) (concluding that defendant's admission that "attempting to collect similar claims in a similar manner is its sole business, it necessarily follows that it is a 'debt collector' under the FDCPA"). Because the defendants did not move for summary judgment on that basis, however, I will not grant summary judgment in their favor for that reason alone.

2. *In Connection with the Collection of Any Debt*

Assuming the defendants are debt collectors under the statute, I must next consider whether the alleged communications were sent "in connection with the collection of any debt." 15 U.S.C. § 1692e. In my discussion regarding whether the defendants engaged in debt collection activities, I already determined that the September 3 Letter constitutes an attempt to collect on a debt. Accordingly, it can be considered a communication sent "in connection with

the collection of any debt," *see Hart*, 797 F.3d at 226, and the defendants will be liable for any misrepresentations made in that communication. 15 U.S.C. § 1692e.

I must also consider whether any other challenged communication satisfies the preliminary "in connection" requirement. First, Cicalo alleges that the November 19 Letter contained a misrepresentation. The November 19 Letter was a communication sent in accordance with section 1692g's requirement that the debt collector validate the debt. Considering the November 19 Letter is a letter sent pursuant to an obligation created by the FDCPA, it must be considered a communication in connection with the collection of a debt, and thus the defendants are liable for any misstatement contained therein.

Second, Cicalo alleges that the so-called "validation notice" that was attached to the defendants' foreclosure complaint constitutes a misrepresentation in connection with an attempt to collect a debt. That communication, however, does not have many of the hallmarks associated with an attempt to collect on a debt. It does not request payment or provide for a mechanism for paying the debt. Additionally, and most importantly, it does not identify the defendants as debt collectors and does not state that they are attempting to collect a debt. Pl.'s Ex. 9 (doc. # 70-2). Moreover, unlike the September 3 Letter, the notice was attached to a formal pleading in the foreclosure action. Unlike a communication that is ancillary to the enforcement of a security interest, the alleged "validation notice" was attached to the foreclosure complaint and thus was part of that enforcement. *See Romea v. Heiberger & Associates*, 163 F.3d 111, 117 (2d Cir. 1998) (distinguishing between actions that are prerequisites for a proceeding and actions that are *part* of the civil action itself). As will be discussed below, the notice can only be reasonably read as a notice intended to provide information and not as an attempt to collect on a debt. For that

reason, it cannot be considered to be sent "in connection with the collection of any debt" and thus cannot violate section 1692e.

B. Alleged Misrepresentations[5]

Section 1692e prohibits "the use of *any* false, deceptive, or misleading representation in a collection letter . . . ." *Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993) (emphasis in original). A collection letter "is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).[6] That said, "[n]ot every technically false representation by a debt collector amounts to a violation of the FDCPA." *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). Several courts have held that the least-sophisticated-consumer standard encompasses a materiality requirement; that is, statements must be *materially* false or misleading to be actionable under the FDCPA. *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3d Cir. 2015) ("a false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor; in other words, it must be *material* when viewed through the least sophisticated debtor's eyes"); *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012) ("Although Congress did not expressly require that any violation of § 1692e be material, courts have generally held that violations grounded in "false representations" must rest on material misrepresentations."); *Wallace v. Washington Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) ("[A] statement must be materially false or misleading to violate Section 1692e."); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010)

---

[5] Although I need not reach the issue, I do note that the defendants did not move for summary judgment on the basis of a *bona fide* error defense, 15 U.S.C. § 1692k(c), and thus I will not consider it.

[6] Similarly, section 1692g(a)(1) requires a debt collector to state the amount that is owed by the debtor. 15 U.S.C. § 1692g(a)(1). Implicit in that requirement is a requirement that the debt collector state the correct amount that is owed. *See Dragon v. I.C. Sys., Inc.*, 483 F. Supp. 2d 198, 203 (D. Conn. 2007).

("[F]alse but nonmaterial representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under § 1692e."); *Hahn v. Triumph P'ships*, 557 F.3d 755, 757–58 (7th Cir. 2009) ("A statement cannot mislead unless it is material, so a false but non-material statement is not actionable.").  Although the Second Circuit has yet to address the issue in a published opinion, district courts within the Circuit agree that false or misleading statements do not come within the ambit of section 1692e unless such statements are material. *See Gabrielle v. Law Office of Martha Croog*, 2012 WL 460264, at *2 (D. Conn. Feb. 9, 2012), *aff'd*, *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (citing *Lane v. Fein, Such and Crane, LLP*, 767 F. Supp. 2d 382, 389 (E.D.N.Y. 2011)) ("Courts considering a FDCPA violation have looked to whether a statement is materially false or misleading."); *Klein v. Solomon & Solomon, P.C.*, 2011 WL 5354250, at *2 (D. Conn. Oct. 28, 2011) ("Even if a statement is false in some technical sense, it does not violate the statute unless it would mislead the unsophisticated consumer . . . .  Statements are materially false and misleading if they influence a consumer's decision or ability to pay or challenge a debt.");

Finding those authorities persuasive, I have previously held that the "least-sophisticated-consumer standard does contain a materiality requirement."  *Walsh v. Law Offices of Howard Lee Schiff, P.C.*, 2012 WL 4372251, at *4 (D. Conn. Sept. 24, 2012).  As I have already stated, "the requirement of materiality is in harmony with the dual purposes of the least-sophisticated-consumer standard: the need to protect unsuspecting customers from unscrupulous debt collectors and the need to ensure that debt collectors are not held liable 'for unreasonable misinterpretations.'"  *See id.* (quoting *Clomon*, 988 F.2d at 1319).  No conceivable consumer interest is furthered by imposing liability for technical falsehoods that have no bearing on the debt or the ability to dispute it.  *See Hasbrouck v. Arrow Fin. Services LLC*, 2011 WL 1899250,

at *4 (N.D.N.Y. May 19, 2011) ("An immaterial statement or information does not contribute to the objective of the FDCPA nor does it undermine it."). Thus, an alleged false or misleading statement is not actionable under section 1692e unless it is "material," such that it would "influence a consumer's decision or ability to pay or challenge a debt." *Klein*, 2011 WL 5354250, at *2; *see also Lauthman v. 2800 Coyle St. Owners Corp.*, 2014 WL 4843947, at *11 (E.D.N.Y. Sept. 26, 2014).

Cicalo's misrepresentation claims can be broken into three categories. First, Cicalo alleges that Hunt's September 3 Letter to Cicalo misrepresented the amount of the debt he owed First Niagara by not including the $7,329 HOA fees associated with the property. Second, Cicalo alleges that Hunt misrepresented the fact that it had contacted First Niagara in order to confirm the amount of the debt when it in fact had not. Third, Cicalo alleges that Hunt's inclusion of a "validation notice" attached to its foreclosure complaint misled Cicalo into believing that he had a second opportunity to contest the amount of the debt.

### 1.  *Amount of Debt Listed in September 3 Letter*

Cicalo claims that the defendants are liable under section 1692e because they *understated* the amount owed by Cicalo in their September 3 Letter. The letter stated that Cicalo owed First Niagara a balance of $115,058.54, as of the date of the letter. Pl.'s Local Rule 56(a)1 Stmt. at ¶ 6. The parties agree that the September 3 Letter did not include $7,329 in HOA fees that were in fact owed to First Niagara by Cicalo as of August 14, 2015. *Id.* at ¶ 6–7. The letter also stated that, "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." Pl.'s Ex. 1. Although the parties do not dispute that the letter was factually inaccurate given that it stated an amount of debt that failed to include

the $7,329 in HOA fees that had already accrued, the parties dispute whether that inaccuracy constitutes a section 1692e violation.

Although the Second Circuit has not addressed the issue, at least one other circuit has expressed skepticism about whether "a de minimis misstatement of the total amount owed" is actionable under the FDCPA. *Powell v. Palisades Acquisition XVI, LLC*, 782 F.3d 119, 127 (4th Cir. 2014) (expressing doubt that de minimis misstatements are material but concluding that overstatement of more than 50% was *not* de minimis). After all, the FDCPA is "not concerned with mere technical falsehoods that mislead no one, but instead with genuinely misleading statements that *may frustrate a consumer's ability to intelligently choose his or her response*." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1034 (9th Cir. 2010) (internal citations omitted). In *Donohue*, the court dismissed an action notwithstanding an allegation of a factually false statement because it could "conceive of no action" that the plaintiff would have taken had the truth of that statement been disclosed. *Id.* In other words, a de minimis false statement is not actionable because it was not material. *Id.*

A technically false statement regarding the amount of debt owed is even less likely to be material when the statement slightly underestimates the amount due. *See Gates v. Asset Acceptance, LLC*, 801 F. Supp. 2d 1044, 1047–48 (S.D. Cal. 2011); *Haney v. Portfolio Recovery Assocs., L.L.C.*, 2015 WL 1457216, at *6 (E.D. Mo. Mar. 30, 2015), *aff'd in part, rev'd in part on other grounds and remanded sub nom. Haney v. Portfolio Recovery Assocs., L.L.C.*, 837 F.3d 918 (8th Cir. 2016), *as amended* (Dec. 27, 2016) ("There was no harm because the amounts sought in each letter were less than the amounts [defendant] could have legally recovered . . . ."). In *Gates*, the Court considered a state court complaint that was factually false only because it requested a prejudgment interest rate lower than that which the judgment creditor was entitled.

*Gates*, 801 F. Supp. 2d at 1047. As an initial matter, the Court posited that such a communication may not be considered misleading because it "sought recovery of sums to which [the defendant] was clearly and lawfully entitled." *Id.* at 1048 (quoting *Donohue*, 592 F.3d at 1033). Moreover, because the complaint "sought less interest than the amount owed," the alleged misstatement could not be considered material. *Id.* (citing *Lane v. Gordon,* 2011 WL 488901, at *1 (D. Or. Feb. 7, 2011) (holding that the defendant did not make a material misstatement of the amount owed when the "Defendant simply sought less in the complaint than the full amount due and owing")). Finally, even if there were a theoretical possibility that an understatement of a debt would be materially misleading, the Court held that the claim failed because the plaintiff submitted no evidence indicating the circumstances under which a consumer could have been misled. *Id.*

The technically false statement at issue in this case is a letter that stated an amount owed of $115,058.54, when the true amount owed, at the time of the letter, was $122,387.54. In other words, the letter understated the amount of debt owed by 6%. Nothing in the record indicates how that miscalculation could have been materially false or misleading to even the least sophisticated consumer. Indeed, nowhere does Cicalo assert that the underrepresentation of the amount he owed caused him any confusion about the validity of the debt or otherwise impeded his ability to pay or challenge it.

This is not a case in which an overstatement of the amount of the debt operated to confuse the consumer or exert pressure on him to respond to collection efforts. *See Conteh v. Shamrock Cmty. Ass'n, Inc.*, 648 F. App'x 377, 379 (4th Cir. 2016) (concluding that 10.5% *overstatement* was not de minimis); *Boedicker v. Rushmore Loan Mgmt. Servs., LLC*, 2017 WL 1408158, at *5 (D. Kan. Apr. 20, 2017) (approximately 30% *overstatement* was not de minimis).

Rather, this is a case in which a technical falsehood had no potential adverse effect on even the least sophisticated consumer. *See Dudley v. Focused Recovery Solutions, Inc.*, 2017 WL 2981345, at *4 (E.D. Va. July 12, 2017) (8.4% understatement not material); *Grunwald v. Midland Funding LLC*, 172 F. Supp. 3d 1050, 1054–55 (D. Minn. 2016) (0.3% *overstatement* not material); *Robbins v. Med-1 Sols., L.L.C.*, 2016 WL 891329, at *9 (S.D. Ind. Mar. 9, 2016) (0.06% *overstatement* not material). Absent any evidence in the record that the least sophisticated consumer could be confused by the payoff amount in the September 3 Letter, I cannot conclude that such statement was materially false or misleading. *See Scheuer v. Jefferson Capital Sys., LLC*, 43 F. Supp. 3d 772, 783 (E.D. Mich. 2014) ("[Plaintiff] has failed to explain how [defendant's misstatements] would impair an unsophisticated debtor's ability to respond to the Letter.").

Moreover, even if the misstatement of the amount, in a vacuum, could be considered misleading, it must be considered in connection with the letter as a whole. The letter stated that, "[b]ecause of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater." Pl.'s Ex. 1. Although the HOA fee arguably falls outside of the types of charges that vary from day to day, this portion of the letter put Cicalo on notice that the actual amount due on the day he pays may be larger. Thus, no reasonable consumer would be misled by the mistaken payoff amount, even though it failed to include all charges actually due. Absent any evidence in the record regarding how such statement could be considered material, I conclude that its inaccuracy is not actionable under the FDCPA.

2. *Statement re Verification in November 19 Letter*

Cicalo claims that the defendants are liable under section 1692e because they stated, in the November 19 Letter in response to Cicalo's verification request, that Hunt had contacted

First Niagara and confirmed that the amount set forth in the initial letter was accurate. Cicalo asserts that the November 19 Letter was false and/or misleading because Hunt had not in fact received written or oral confirmation of Cicalo's debt from First Niagara.

I need not determine whether such a statement would be considered a violation of section 1692e because there is no evidence in the record to indicate that the November 19 Letter was factually false. To survive summary judgment on a claim that the letter was false, Cicalo must point to some evidence in the record from which a jury could reasonably conclude that Hunt falsely stated that it had contacted First Niagara to confirm the debt. The only evidence that Cicalo points to are (1) the defendants' failure to respond to a particular allegation in the Amended Complaint; (2) Hunt's privilege log; and (3) McCalla's Responses to Requests to Admit. First, the defendants' decision to refuse to formulate a response to paragraph 14 of the Amended Complaint was understandable because they were under the impression that it related only to a cause of action, improper verification, that had been previously dismissed by the court. A fair reading of the Amended Complaint supports the defendants' decision—Cicalo did not amend his complaint after the motion to dismiss to indicate that he was bringing a misrepresentation claim in connection with the verification letter (as opposed to the improper verification claim that had been dismissed). It was not unreasonable for the defendants to refuse to respond to that portion of the complaint, and accordingly I will not deem it an admission.

Cicalo's additional citations, to Hunt's privilege log and McCalla's Responses to Requests to Admit, # 13, do not provide evidence that Hunt failed to communicate with First Niagara between Cicalo's request for verification and the November 19 Letter. The Responses to Requests to Admit do not admit anything. The privilege log, rather than showing a lack of communication, shows that Hunt did in fact communicate with First Niagara during the relevant

period. Accordingly, there is insufficient evidence in the record for a reasonable jury to conclude that the November 19 Letter was factually false, and thus that statement cannot be deemed a misrepresentation under the FDCPA.

3. *Inclusion of Validation Notice attached to Foreclosure Complaint*

Finally, Cicalo claims that the defendants are liable under section 1692e for including what Cicalo describes as an additional validation notice that was attached to the foreclosure complaint served on Cicalo. I have already concluded that the purported validation notice cannot violate section 1692e because it cannot be reasonably viewed as a communication "in connection with the collection of any debt." 15 U.S.C. § 1692e. Nevertheless, even if it could, summary judgment in favor of the defendants is warranted on this claim because Cicalo provides no evidence that it was factually false or capable of a reasonable, yet misleading, interpretation.

Cicalo asserts that the second validation notice was misleading because it gave Cicalo the false representation that he had a second opportunity to dispute the debt. In response, the defendants rely on two cases that are not on point. First, the defendants cite to *Carlin*, which recently held that, in the context of a section 1692g claim, "documents that are superfluously attached to a formal pleading are not initial communications . . . ." 852 F.3d at 213. The Court in *Carlin* unambiguously held that it "express[ed] no view on the merits" of a claim that a superfluous validation notice could be misleading, in violation of section 1692e, if it misled the debtor into believing that he had an additional thirty days to dispute the debt.

Second, the defendants cite to *Delmoral v. Credit Prot. Ass'n, LP*, which held that the mailing of an additional validation notice does not restart the thirty-day validation period. 2015 WL 5793311, at *9 (E.D.N.Y. Sept. 30, 2015). Cicalo does not claim that the issuance of an additional validation notice gave him an additional opportunity to contest the validity of the debt;

Cicalo claims that the additional notice misled him into *believing* that he had an additional opportunity. It is that alleged deception that I must consider in the context of a section 1692e claim.

A communication will be deemed "deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996). The fact that a given statement may be factually true does not, itself, indicate it is not misleading. *McMillan v. Collection Professionals Inc.*, 455 F.3d 754, 761 (7th Cir. 2006). A statement may be misleading if "it fails to convey [the required] information clearly and effectively and thereby makes the least sophisticated consumer uncertain as to her rights." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 309 (2d Cir. 2003). That said, the least-sophisticated consumer standard "requires courts, as a matter of law, . . . not [to] entertain a plaintiff's bizarre, peculiar, or idiosyncratic interpretation of [the communication]." *McMillan v. Collection Prof'ls Inc.*, 455 F.3d 754, 758 (7th Cir. 2006). Mere assertions of how an unsophisticated consumer may *believe* a particular communication to read does not automatically render that interpretation reasonable. *Dick v. Enhanced Recovery Co., LLC*, 2016 WL 5678556, at *7 (E.D.N.Y. Sept. 28, 2016). When there is nothing "deceptive-seeming about the communication" on its face, the plaintiff may not "rest on the text of the communication." *Lucero v. Bureau of Collection Recovery, Inc.*, 2012 WL 681797, at *13 (D.N.M. Feb. 28, 2012). One cannot survive summary judgment on a misrepresentation claim when "a statement claimed to be false is obviously true." *Id.* (internal quotation marks and alterations omitted).

Although Cicalo's allegation and briefing refers to the communication attached to the foreclosure complaint as a "Validation Notice," the evidence establishes that the document

attached to the foreclosure complaint was not in fact a validation notice.  Rather, it was a

document titled "INFORMATION RELATING TO 'VALIDATION NOTICE.'"  Pl.'s Ex. 9.

The document reads as follows:

> This Writ, Summons and Complaint are legal documents used to
> commence a lawsuit with regards to the debt referenced within them.  You
> must follow the instructions provided therein should you wish to preserve
> your interests in the suit, even if you dispute the validity or the amount of
> the debt.  As lawyers, this office may file papers in the suit according to
> the Statutes, Rules of Court and Standing Orders in Connecticut.  The
> 'Validation Notice' which has been or will be sent to the borrower(s)
> ("consumers") in no way alters their rights or obligations with respect to
> this lawsuit.  If you are the borrower ("consumer"), and if you notify us
> that the debt or any portion thereof is disputed, or if you request proof of
> the debt or the name and address of the original creditor within the thirty
> (30) day time period of the validation notice, we will stop our collection
> efforts including this foreclosure suit until we mail the requested
> information to you.

Pl.'s Ex. 9.

On its face, the document communicates two important pieces of information.  First, it

informs the consumer that the "Validation Notice," which may have already been sent to the

borrower, does not alter the borrower's rights or obligations with respect to the lawsuit.  *Id.*

Based on the unambiguous language in the document, it would be unreasonable, even for the

least sophisticated consumer, to conclude that the document itself altered Cicalo's rights or

obligations with respect to the foreclosure action.  Second, the document states that "if you

notify us that the debt or any portion thereof is disputed, or if you request proof of the debt or the

name and address of the original creditor w*ithin the thirty (30) day time period of the validation

notice*, we will stop our collection efforts . . . ."  *Id.* (emphasis added).  The fact that the

document is titled "INFORMATION RELATING TO 'VALIDATION NOTICE'" and that it

specifically references the thirty day time period for the validation notice indicates that the

document itself is not in fact the validation notice.  In other words, the document is what it

purports to be: information relating to the validation notice. Even if the document may be *unreasonably* interpreted in a way that could confuse the least sophisticated consumer, it cannot support an FDCPA violation because a factually true statement is not deceptive unless it could *reasonably* be interpreted in a manner that makes it appear false. *Russell*, 74 F.3d at 35.

Unlike the language in the case on which Cicalo primarily relies, *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 813 (7th Cir. 2016), the language of the document attached to the foreclosure complaint is not itself inaccurate, nor is it subject to an interpretation that is inaccurate. Moreover, other cases cited by Cicalo are inapposite because they involve superfluous inclusions of actual validation notices and not a document that merely references a validation notice. *See Campbell v. Sansone Law, LLC*, 2016 WL 4089349, at *2 (E.D. Mo. Aug. 2, 2016); *Stewart v. Shapiro*, 2015 WL 11254384, at *1 (S.D. Fla. Mar. 2, 2015), *report and recommendation adopted in part, rejected in part*, 2015 WL 11254291 (S.D. Fla. Mar. 25, 2015); *Desir v. Greenspoon Marder, P.A.*, 2014 WL 2767230, at *1 (S.D. Fla. June 19, 2014).

Ironically, Cicalo alleges a violation of 1692e based on a communication that was probably sent to Cicalo for the purposes of resolving any ambiguity regarding the difference between the time to respond to a foreclosure complaint and the time to respond to a validation notice. In a case cited by Cicalo, *Desir v. Greenspoon Marder, P.A.*, the Court noted numerous examples of situations in which a validation notice attached to a foreclosure complaint would be considered deceptive to the consumer because it could conflate the time to respond to the complaint and the time to dispute the debt. *See Desir*, 2014 WL 2767230, at *1. Presumably to avoid that problem, the defendants sent what was titled "INFORMATION RELATING TO 'VALIDATION NOTICE,'" for the purposes of explaining to Cicalo that any validation notice he received or will receive "in no way alters their right or obligations with respect to this

lawsuit." Pl.'s Ex. 9. In other words, the document at issue here operated to clarify that the validation notice and foreclosure complaint were separate documents and the corresponding time to respond to the complaint was in no way related to the time to respond to any validation notice that Cicalo might have received. The defendants may not be held liable for attaching a document to the foreclosure complaint that was intended to resolve, and did in fact resolve, any ambiguity regarding the consumer's obligations with respect to the foreclosure suit.

## IV.     Conclusion

For the foregoing reasons, the defendants' cross-motion for summary judgment is granted. Cicalo's motion for summary judgment is denied. The Clerk shall enter judgment in favor of the defendants and close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 10th day of August 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge